```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

RONALD LEE HARRISON and
BRENDA G. HARRISON

    Plaintiffs

v.                                    Civil Action No.: 2:05-0411

GREGORY ADAMS
d/b/a BOB'S MOBILE HOMES,
SKYLINE CORPORATION,
GEORGIA-PACIFIC CORPORATION,
GREG SMITH, and
LIBERTY MUTUAL FIRE INSURANCE COMPANY

    Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is plaintiffs' motion, filed June 17, 2005, seeking remand of this matter to the Circuit Court of Jackson County, West Virginia, on the ground that the removing defendants cannot demonstrate that the nondiverse defendant, Greg Smith, was fraudulently joined.[1]

---

[1] Plaintiffs also contend that remand is proper inasmuch as the "[d]efendants have failed to demonstrate that all [d]efendants consent to removal." The court need not address this argument as it was not asserted within 30 days of the filing of the removal notice. <u>See</u> <u>Loftis v. UPS</u>, 342 F.3d 509, 516-17 (6th Cir. 2003) ("[T]echnical defects in the removal procedure, such as a breach of the rule of unanimity . . . must be raised by a party within thirty days of removal or they are waived."); <u>See also</u> <u>Balazik v. County of Dauphin</u>, 44 F.3d 209, 213 (3rd Cir.

I.

According to the allegations of their complaint, in September of 1995, the plaintiffs purchased a mobile home from defendant Gregory Adams d/b/a Bob's Mobile Homes ("Adams"). (Compl. ¶ 9.)  The mobile home was manufactured by defendant Skyline Corporation ("Skyline") and was sold to the plaintiffs by one of Adam's employees, defendant Greg Smith.  (Id. ¶¶ 4,8.)

In the fall of 2001, plaintiffs noticed an odor in the area of the hot water tank, which was closed off from the rest of the mobile home by a removable wall panel.  (Id. ¶ 19.)  Upon removal of the panel, the plaintiffs discovered that the wall board on three sides of the tank had deteriorated and had become black in color.  (Id.)  Plaintiffs also noticed that a non-galvanized "black pipe" fitting, which connected the factory installed hot water tank to the plumbing system, had rusted and was leaking water onto the floor.  (Id.)  Plaintiffs subsequently replaced and repaired the floor beneath the tank and the lower portion of the board around the tank.  (Id. ¶ 20.)

Plaintiffs also assert that on a number of occasions in

---

1995).

2001 and 2002, they observed black residue collecting in various areas around the home. (Id. ¶ 21.) Most notably, in December of 2002, plaintiffs found that a black substance was "oozing" from oak flooring that they had recently installed. (Id. ¶ 22.) Pursuant to a homeowners policy issued by defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), plaintiffs submitted a claim and received payment for the replacement of wood flooring, sheet rock, and vinyl sheet flooring. (Id. ¶ 70.)

Shortly thereafter, testing by an environmental engineer revealed that the mobile home was infected with toxic mold and was uninhabitable. (Id. ¶ 24.) Plaintiffs submitted another claim to Liberty Mutual for their losses associated with the toxic mold infestation. (Id. ¶ 71.) After Liberty Mutual authorized an evaluation of the mold, it did not further discuss the claim with the plaintiffs, failed to pay for the authorized evaluation of the mold, and did not complete the adjustment of the claim. (Id. ¶ 73.)

In addition to the mold infestation, plaintiffs contend that the mobile home contained toxic levels of formaldehyde, which posed a significant hazard to indoor air quality. (Id. ¶ 41.) According to plaintiffs, Georgia-Pacific Corporation ("Georgia Pacific") provided Skyline with pressed wood decking

that contained particulated formaldehyde. (Id. ¶ 37.) In the course of manufacturing the mobile home, Skyline cut the wood decking into pieces creating sawdust. (Id.) This sawdust managed to get into the air heating ducts and/or the cavity below the decking, eventually causing excessive levels of formaldehyde to be pumped into the air. (Id. ¶ 38.)

On April 11, 2005, plaintiffs instituted this action in the Circuit Court of Jackson County. Count I of plaintiffs' complaint asserts claims of fraud and misrepresentation against unidentified "Defendants." Count II alleges Skyline negligently manufactured the mobile home, and Georgia Pacific negligently manufactured the pressed wood. Counts III and IV contend Adams and Skyline breached implied and express warranties associated with the sale of the mobile home. Count V seeks a court order declaring that plaintiffs are entitled to insurance coverage for the losses associated with their home's toxic mold infestation. Counts VI and VII assert Liberty Mutual engaged in unfair claims practices in violation of W. Va. Code § 33-11-4(9), and its actions in denying the plaintiffs' claim were done in bad faith.

On May 16, 2005, Liberty Mutual removed this case, contending that the only nondiverse defendant, Greg Smith, had been fraudulently joined. The removal petition was joined by

4

defendants Skyline, Georgia-Pacific, and Smith.[2]  On June 17, 2005, plaintiffs filed a motion seeking remand on the grounds that not all defendants have joined in removal and the defendants cannot establish that the nondiverse defendant, Smith, was fraudulently joined.  The removing defendants have responded to that motion.

II.

The standards governing fraudulent joinder are well-settled in this circuit.  Our court of appeals has observed that a "heavy[,]" though not impossible, burden is laid upon the defendant removing a case on such grounds:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999) (quoting

---

[2]As of this date, over eleven months after removal of this action, Smith and Adams have not filed answers.  Smith's only appearance is on the removal petition, which was signed on his behalf.  No counsel of record appears for Smith.  Adams has yet to make an appearance in this case.  The docket reflects that on October 22, 2005, the summons was served on Gregory Adams, who is listed as doing business as Bob's Mobile Homes.  The summons notes that any answer was to be filed by November 14, 2005.

<u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999).

As <u>Hartley</u> illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray in the record are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a "glimmer of hope" for recovery in order to have his claims remanded:

> CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.
>
> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing joinder of the public defendants is proper in this case because courts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> . . . . .
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh

>   the factual evidence in this case. Hartley's claims may
>   not succeed ultimately, but ultimate success is not
>   required to defeat removal. Rather, there need be only
>   a slight possibility of a right to relief. Once the
>   court identifies this glimmer of hope for the
>   plaintiff, the jurisdictional inquiry ends.

**Id.** at 425-26.

### III.

From the briefing, it appears the dispute over whether Smith was fraudulently joined has arisen as a result of ambiguity in the plaintiffs' complaint. The only paragraph of plaintiffs' 83-paragraph complaint to mention Smith in a factual allegation states that,

>   The Plaintiffs did not view a mobile home, which
>   met their needs or specifications. Bob's,
>   however, through its sales person, Greg Smith,
>   represented that it could obtain, by special
>   order, a mobile home manufactured by the
>   defendant Skyline with the design characteristics
>   desired by Plaintiffs.

(Compl. ¶ 8.) With respect to their fraud and misrepresentation claim asserted under Count I, the plaintiffs repeatedly refer generally to "Defendants." Count I reads in full,

>   47. Plaintiffs re-allege the matters set forth in
>   paragraphs 1 through 46 herein.
>
>   48. Defendants, fraudulently, with the be [sic] intent
>   to deprive Plaintiffs of their funds, sold to

> Plaintiffs a Mobile Home which was negligently manufactured and fraudulently represented to Plaintiffs that said home was fully warranted manufactured in compliance with all applicable regulations, and free of defects.
>
> 49. Defendants wrongfully misrepresented to Plaintiffs that the Mobile Home was constructed in a good workmanlike manner, in compliance with all applicable standards when they should have known that the Mobile Home did not comply with various standards.
>
> 50. Defendants failed to disclose to Plaintiffs that the Mobile Home contained formaldehyde and thereby suppressed and did not disclose critical facts to Plaintiffs.
>
> 51. The Defendants [sic] misrepresentations and suppressions of material facts were intentional.
>
> 52. The Plaintiffs reasonably relied upon the Defendants misrepresentations and suppressions of material facts.
>
> 53. The Plaintiffs were harmed and damaged by Defendants [sic] misrepresentations and suppressions of material facts.

(Compl. ¶¶ 47-53.) Ambiguity arises as the plaintiffs did not identify which of the five "Defendants" engaged in the fraud and misrepresentations.

Reduced to its essence, the removing defendants maintain that Smith has been fraudulently joined inasmuch, they say, as no cause of action against Smith is stated in the complaint. They further note that the mention of Smith in paragraph 8 only describes Smith as an agent of Adams and, as a

"factual-only" allegation, it cannot support a fraud claim against Smith, as fraud must be plead with particularity.

While the complaint is ambiguous, it can fairly be read to assert a fraud and misrepresentation claim against Smith.  The fraud and misrepresentation count uses the plural term "Defendants" when describing the actions that comprise the claim.  As these allegations relate to the sale of the mobile home, and Smith had contact with plaintiffs during the sale, the term "Defendants" could refer to Smith.  This reading of the complaint is further supported by plaintiffs' contention that "the complaint states that Smith made certain representations about the quality, compliance with regulations and compliance with applicable regulations upon which Plaintiffs relied."[3] (Pls.' Memo. 5.)  From that statement it is clear that, while plaintiffs did not separately name "Smith" in their fraud and misrepresentation allegations, it was their intention to do so.[4]

---

[3] Plaintiffs' mistaken belief that Smith appears by name in the fraud and misrepresentation allegation may explain why plaintiffs have not sought leave to amend that count of the complaint.

[4] From their response to Skyline's motion to dismiss, it appears plaintiffs also intended to include Skyline in their fraud and misrepresentation claim.  Plaintiffs' response to Georgia Pacific's motion to dismiss suggests that no fraud claims are asserted against it.

Although the complaint can be read to assert a fraud and misrepresentation claim against Smith, that claim was not pled with particularity.  Rule 9, which pertains to the pleading of special matters, provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1297 at 590 (2d ed. 1990)).  Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.  DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

While plaintiffs did describe the general nature of their fraud and misrepresentation claim, they did not list the time and place of the representations, and their use of the ambiguous term "Defendants" did not inform each defendant of the

10

nature of its alleged participation in the fraud.  Thus, plaintiffs' complaint does not satisfy the requirement that fraud be plead with particularity.

The court's finding that plaintiffs have failed to plead a fraud claim against Smith with particularity, does not, as the removing defendants appear to suggest, equate to a finding of fraudulent joinder.  The Fifth Circuit's decision in <u>Hart v. Bayer Corp.</u>, 199 F.3d 239 (5th Cir. 2000), is instructive on this point.  In <u>Hart</u>, the defendants maintained that removal was proper as the plaintiffs' fraud claim against the nondiverse defendant failed to meet the particularity requirements under 9(b).  <u>Id.</u> at 247.  In reversing the district court's finding that no possibility of recovery existed against the nondiverse defendant, the court noted that while the fraud claim was not plead with particularity, "such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend." <u>Id.</u> at 248 (citations omitted).

In this case, the plaintiffs would likely have been given the opportunity to amend their complaint under state law, and any deficiency in the pleading of plaintiffs' fraud claim would likely have been cured in an amended complaint.  <u>Coberly v. Coberly</u>, 580 S.E.2d 515, 517 (W. Va. 2003) (noting that where

plaintiff's inartfully drafted complaint failed to state fraud with particularity, plaintiff should be given leave to amend the complaint under Rule 15.)  Given the likelihood that plaintiffs would have been given leave to amend their complaint, the court remains unconvinced that plaintiffs would have had no possibility of recovery against Smith.  To hold otherwise would create the harsh result of dismissal with prejudice against the nondiverse defendant for a mere pleading defect.[5]

Finally, the court notes that the removing defendants base their claim of fraudulent joinder only on plaintiffs' pleading deficiencies, and do not contest plaintiffs' underlying assertion that Smith could possibly be held liable for fraud and misrepresentation under West Virginia law.  (Pls.' Resp. Memo. 6.)  Indeed, assuming the facts as alleged in the fraud and misrepresentation claim are true, plaintiffs would have, at least, a possibility of recovery inasmuch as an agent or employee can be held personally liable for his own torts, and this personal liability is independent of his agency or employee relationship.  Barath v. Performance Trucking Co., Inc., 424

---

[5]While the court agrees with the removing defendants that the complaint could have been better drafted, the better course of action for the defendants would have been to seek a more definitive statement under Rule 12(e) of the West Virginia Rules of Civil Procedure.  See Crosby, 580 S.E.2d at 517.

S.E.2d 602, 603 (W. Va. 1992).

IV.

Having concluded that plaintiffs' complaint can be read to include a fraud and misrepresentation claim against Smith, that plaintiffs would have likely been given leave to amend their complaint in state court to cure the alleged pleading defects in their claim against Smith, and that plaintiffs have alleged facts that would demonstrate a possibility of recovery against Smith under West Virginia law, the court finds that the removing defendants have failed to meet their burden of demonstrating fraudulent joinder.

Accordingly, the court ORDERS that plaintiffs' motion to remand be, and it hereby is, granted.  The court further ORDERS this action be, and it hereby is, remanded to the Circuit Court of Jackson County for all further proceedings.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and a certified copy to the clerk of court for the Circuit Court of Jackson County.

DATED: April 18, 2006

John T. Copenhaver, Jr.
United States District Judge